Filed 1/4/23  P. v. Thomas CA4/1
Opinion following transfer from Supreme Court

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>STEVEN GARY THOMAS,<br><br>    Defendant and Appellant. | D078289<br><br><br>(Super. Ct. No. SCD102585) |

APPEAL from an order of the Superior Court of San Diego County, Joan P. Weber, Judge.  Reversed and remanded.

Andrea S. Bitar, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Randall D. Einhorn, Deputy Attorneys General for Plaintiff and Respondent.

Steven Gary Thomas, who was convicted of special circumstance felony murder in 1996, appeals the summary denial of his petition for recall and resentencing pursuant to Penal Code section 1172.6.[1]  The trial court denied his petition at the prima facie stage, concluding the jury's special circumstance findings of robbery-murder and kidnapping-murder rendered Thomas categorically ineligible for relief.  To the extent the Supreme Court's postconviction decisions in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*) narrowed special circumstance liability for felony murder, the trial court followed case law that would require Thomas to first file a petition for writ of habeas corpus before seeking resentencing under section 1172.6.

In a prior opinion, we rejected the trial court's conclusion that special circumstance findings made before *Banks* and *Clark* could categorically bar a section 1172.6 petitioner from relief.  We nevertheless remanded to permit the trial court to determine whether the evidence before the jury would satisfy *Banks* and *Clark* standards.  (*People v. Thomas* (Nov. 2, 2021 (D078289) [nonpub. opn.].)  Review was granted (S272196), with briefing deferred pending consideration of related issues in *People v. Strong*, S266606.  After issuing its decision in *People v. Strong* (2022) 13 Cal.5th 698 (*Strong*), the Supreme Court transferred this case back with directions to vacate and reconsider our prior opinion in light of *Strong*.

As before, we conclude that a pre-*Banks/Clark* special circumstance finding does not categorically bar a defendant from making a prima facie case

---

[1]    Further undesignated statutory references are to the Penal Code.  At the time Thomas filed his petition, the recall procedure was codified in section 1170.95.  This statute was amended and subsequently renumbered. (Stats. 2021, ch. 551, § 1, subd. (b); Stats. 2022, ch. 58, § 10.)  Unless otherwise noted, citations in this opinion are to the current statute, codified at section 1172.6.

for section 1172.6 relief.  But as held in *Strong*, it is not enough to remand the matter for sufficiency of the evidence review applying the *Banks* and *Clark* standards.  Instead, under *Strong*, the trial court must issue an order to show cause and conduct further proceedings under section 1172.6.

FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Murder Conviction and Direct Appeal*[2]

In the early hours of May 8, 1994, Karl S., Misty H., and Susan W. returned to San Diego from a workshop in Borrego Springs.  Karl pulled his red Toyota up to Susan's apartment in Point Loma shortly after midnight, planning to drop her off first before taking Misty home.  The three unloaded items from the car.  As the two women were upstairs in Susan's apartment, Karl went out to bring up the final load.  Susan and Misty grew concerned after twenty minutes passed with no sign of Karl, and they peered out the window.  They did not see Karl or his car but noticed Misty's blue suitcase and bags of groceries lying in the street.  Around 1:00 a.m., Susan's neighbor Michael C. saw two African American men walking down Mentone Street.  One said to the other, " 'This one over here, man.' "  Michael later saw the same two men in a red Toyota; the car backed up over some luggage and sped off.  At 6:30 that morning, another neighbor Charles H. looked outside his window and observed what looked like a bag of trash or a person lying on the ground.  When the object was still there an hour later, Charles called police.

Responding law enforcement found Karl's dead body.  He had been stabbed five times in the chest with a knife.  Around 7:00 a.m., a police

---

[2]    We draw the following facts from our 1997 opinion addressing Thomas's direct appeal from the judgment in *People v. Thomas* (Oct. 21, 1997, D025797) [nonpub. opn.] (*Thomas I*).  An affidavit from the court reporter supervisor indicates that transcripts of the original trial have been destroyed (Gov. Code, § 69955, subd. (e)).

3

community service officer found Karl's car, abandoned with the key on the roof. Palm prints and fingerprints lifted from the vehicle and its contents matched Thomas.

Thomas's girlfriend Tijwanna J. indicated that Thomas had left around 7:30 p.m. the night before with Leon McInnis and returned around 3:00 or 4:00 o'clock the next morning. A few days after the homicide, Tijwanna saw McInnis retrieve a knife from the rain gutter of her apartment building and throw it on the ground toward Thomas, who picked it up.[3] Tijwanna described Thomas and McInnis as inseparable, but said neither had a "dominant leadership role." When police interviewed Thomas and told him his prints were recovered from Karl's car, he said a person named Paul Boykin instigated the carjacking and killing, and that Thomas merely went along because Boykin had threatened him with a gun.

The San Diego County District Attorney charged McInnis and Thomas with a series of carjacking incidents, one (Karl's) ending in homicide. The amended indictment alleged that in murdering Karl, Thomas "personally used a deadly and dangerous weapon, to wit, a knife" (§ 12022, subd. (b)). It further alleged the murder occurred while Thomas was engaged in a robbery and in a kidnapping (§ 190.2, subd. (a)(17)).

At trial, the prosecution examined medical officer John Eisele, who opined based on the autopsy that Karl was alive and conscious when he was stabbed. Eisele believed Karl did not try to defend himself and was stabbed while being restrained. Susan, Misty, Michael, and Charles provided

---

[3] The probation report adds some other details, but it is unclear from our record whether these additional facts were presented to the jury. According to the report, Tijwanna stated that McInnis retrieved the knife from her rain gutter after Thomas tried to do so unsuccessfully. The probation report further relates that when McInnis threw the knife down, Thomas picked it up and "put it in his pocket."

circumstantial evidence tending to show that Thomas and McInnis carjacked Karl, rifled through the contents of the vehicle (the robbery), took off with him in the car (the kidnapping), drove Karl back and at some point stabbed him before dumping his body and speeding off in his car.

The jury also heard evidence connected to two other charged incidents occurring earlier that week. On May 5, 1994, Thomas and McInnis held up a college student at knifepoint, took his wallet and watch, and forced him to drive in his red Honda to a nearby ATM to withdraw additional money. Thomas and McInnis told the student they would let him go because he had cooperated. When the car was recovered, a suede jacket and tape recorder were missing. In a separate incident on May 7, a parked silver Toyota was stolen. It was found in Point Loma near Susan's apartment, and latent fingerprints lifted from the car matched Thomas.

Defense counsel conceded murder liability but disputed the special circumstance allegations. Under the defense theory, Thomas, who suffered brain damage from a childhood car accident, was not the actual killer (§ 190.2, subd. (b)), did not intend to kill Karl (*id.*, subd. (c)), and was not a major participant in the underlying felonies who acted with reckless indifference to life (*id.*, subd. (d)). Neuropsychologist Dean Delis and a neurologist James Grisolia both examined Thomas and believed his mental faculties would have made him more of a passive follower than a leader.[4] A defense investigator recounted a conversation with Thomas's girlfriend Tijwanna, who described Thomas as being the quieter of the two and McInnis

---

[4]    The prosecution presented evidence in rebuttal from radiologists who downplayed the severity of brain damage reflected on Thomas's MRI scan and a psychiatrist who opined that any brain damage would not have impacted his behavior. Delis disputed the psychiatrist's findings on surrebuttal.

as the leader. Finally, the defense examined pathologist Paul Wolf, who testified that Karl may have been stabbed while lying on the ground, rather than while restrained as the prosecution's pathologist suggested.

The jury convicted Thomas of first degree murder (§ 187, subd. (a)) and found true allegations that the murder was committed during the commission of a robbery (§ 190.2, subd. (a)(17)(A)), and during the commission of a kidnapping (*id.*, subd. (a)(17)(B)). But the jury determined Thomas *did not* personally use a weapon in Karl's murder.[5] As we explained in our prior opinion, that meant they harbored at least a reasonable doubt whether Thomas was the actual killer and based the true special circumstance findings on Thomas aiding and abetting the killing with intent to kill, or on Thomas being a major participant in the robbery or kidnapping and acting with reckless indifference to human life.[6] In a bifurcated penalty phase trial, the jury returned a verdict of life without the possibility of parole.

Thomas asserted three arguments on appeal. We rejected his challenge to the exclusion of propensity evidence that he claimed tended to paint McInnis as the actual killer. We likewise did not accept his instructional error claim regarding the court's denial of a clarifying instruction on the meaning of "major participant" in section 190.2, subdivision (d). Finally, we

---

[5] By contrast, the jury did find that Thomas personally used a knife in connection with the carjacking, kidnapping, and robbery of the college student on May 5, 1994.

[6] Testimony by a prosecution witness that Karl was restrained while being stabbed could support a theory that Thomas aided and abetted the stabbing with intent to kill (§ 190.2, subd. (c)), but the evidence on this point was in conflict. The defense pathologist testified that Karl could have been stabbed as he lay on the ground. In addition, the defense presented evidence that Thomas had impaired mental capacities to suggest he did not have any intent to kill.

6

were not persuaded by his multiple punishment claim under section 654. Accordingly, we affirmed the judgment (*Thomas I, supra,* D025797).

B.    *Enactment of Senate Bill No. 1437*

Effective January 1, 2019, Senate Bill No. 1437 (Stats. 2018, ch. 1015) overhauled sections 188 and 189 to substantially narrow felony murder liability and murder liability under the natural and probable consequences doctrine.  As relevant here, first degree felony murder now requires proof beyond a reasonable doubt that the defendant:  (1) "was the actual killer"; (2) "was not the actual killer but, with intent to kill aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree"; or (3) "was a major participant in the underlying felony and acted with reckless indifference to human life." (§ 189, subd. (e).)  These requirements now mirror the requirements for special circumstance felony murder liability under section 190.2, subdivisions (b) through (d).

Beyond amending the substantive requirements for murder liability, Senate Bill No. 1437 also codified a new statute—section 1172.6—which "established a procedure permitting certain qualifying persons who were previously convicted of felony murder or murder under the natural and probable consequences doctrine to petition the courts that sentenced them to vacate their murder convictions and obtain resentencing on any remaining counts." (*People v. Lamoureux* (2019) 42 Cal.App.5th 241, 246 (*Lamoureux*).) A petitioner is eligible for resentencing relief under section 1172.6 "when all of the following conditions apply: [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of first

7

degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder. [¶] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a).)

On receiving a petition, the trial court must evaluate whether the petitioner has stated a prima facie case for relief. (*Strong, supra,* 13 Cal.5th at p. 708; § 1172.6, subd. (c).) "If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition." (*Strong,* at p. 708.) "If instead, the defendant has made a prima facie showing of entitlement to relief, 'the court shall issue an order to show cause.' " (*Ibid.*; § 1172.6, subd. (c).) Following issuance of an order to show cause, the court holds an evidentiary hearing where the prosecution bears the burden of proving beyond a reasonable doubt that the defendant is *ineligible* for resentencing. (§ 1172.6, subd. (d)(3).) "A finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient [to meet this standard]." (*Ibid.*) If the court decides to grant relief, it will vacate the murder conviction, recall the sentence, and resentence the defendant to a lesser term on any remaining counts. (*Id.,* subd. (d)(1)−(2).)

C.  *Thomas's Resentencing Petition*

Representing himself, Thomas filed a section 1172.6 petition in April 2019 and requested the appointment of counsel. By checking boxes on a preprinted form, he declared that he could no longer be convicted of first-degree felony murder based on Senate Bill No. 1437's amendments to section 189, subdivision (e). Specifically, Thomas alleged he was not the actual killer, did not aid the killer with intent to kill, and was not a major

8

participant in the felony who acted with reckless indifference to human life. The People filed an initial response challenging the constitutionality of Senate Bill No. 1437 and arguing that the jury's special circumstance findings precluded relief under section 1172.6.[7] Attached to the prosecution's brief were the amended indictment, jury verdict forms, trial minutes, and our prior opinion on direct appeal. (*Thomas I, supra,* D025797.)

Appointed defense counsel argued on reply that special circumstance findings made by the jury in 1996 did not preclude relief under section 1172.6. As counsel explained, the Supreme Court's postconviction rulings in *Banks* and *Clark* substantially narrowed the terms "major participant" and "reckless indifference to human life" within the special circumstance statute (§ 190.2, subd. (d)). Thus, a felony murder special circumstance finding predating those decisions would not necessarily qualify for felony murder liability under section 189, subdivision (e)(3) as amended by Senate Bill No. 1437. Acknowledging the split among courts of appeal on this issue, defense counsel urged the court to follow cases finding no categorical bar to relief. The People filed a supplemental brief urging the trial court to instead follow cases that would require Thomas to petition for habeas relief under *Banks* and *Clark* before filing a section 1172.6 petition.[8]

In October 2020, the trial court issued an order summarily denying Thomas's section 1172.6 petition. It accepted the People's position that the jury's special circumstance findings indicated Thomas was a major participant who acted with reckless indifference to human life, barring him

---

[7]    They do not reassert their constitutionality challenge on appeal. (See *People v. Superior Court* (*Gooden*) (2019) 42 Cal.App.5th 270, 275; *Lamoureux, supra,* 42 Cal.App.5th at p. 246.)

[8]    The Supreme Court granted review in *Strong* (discussed *post*) to resolve this split. (*Strong, supra,* 13 Cal.5th at p. 710.)

from relief pursuant to section 1172.6 unless he first filed a petition for habeas corpus under *Banks* and *Clark*.

## DISCUSSION

Thomas appeals the summary denial of his section 1172.6 petition. Addressing this appeal with the benefit of the Supreme Court's guidance in *Strong, supra,* 13 Cal.5th 698, we agree the court erred in concluding that his pre-*Banks* and *Clark* special circumstance findings present a categorical bar to resentencing relief. Because Thomas was tried before *Banks* and *Clark* significantly clarified the standards for "major participation" and acting with "reckless indifference to human life," the jury's findings do not preclude him from seeking relief. On our record, the trial court must issue an order to show cause and conduct further proceedings to evaluate Thomas's entitlement to relief.

A.  *The Trial Court Erred in Summarily Denying Thomas's Petition.*

California's special circumstance statute identifies those crimes deemed sufficiently reprehensible to warrant possible punishment by death or life imprisonment without the possibility of parole. (*Banks, supra,* 61 Cal.4th at p. 797.) One such special circumstance applies to murder that takes place in the commission of an enumerated felony, often referred to as the felony murder special circumstance. (§ 190.2, subd. (a)(17).) Defendants convicted of first degree felony murder who are not the actual killer can only be guilty of the felony murder special circumstance if they aid in the murder with intent to kill (*id.*, subd. (c)) or, lacking an intent to kill, aid in the felony "with reckless indifference to human life and as a major participant." (*Id.*, subd. (d).)

10

In the last decade, the Supreme Court has substantially narrowed the meanings of the terms "major participant" and "reckless indifference to human life" under section 190.2, subdivision (d). The court held in *Banks* that to assess whether a defendant's participation in activities known to carry a grave risk of death was sufficiently significant to be deemed "major," courts must consider the defendant's role in planning the criminal enterprise and supplying or using lethal weapons; defendant's awareness of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the participants; whether the defendant was at the scene of the killing, in a position to facilitate or prevent the actual murder, and by action or inaction played a particular role in the death; and what the defendant did after lethal force was used. (*Banks, supra,* 61 Cal.4th at p. 803.) Similar factors, both subjective and objective, inform whether a defendant acted with "reckless indifference to human life," including a defendant's knowledge that weapons would be used and/or personal use of weapons; his or her knowledge of an accomplice's propensity to kill; the defendant's physical presence at the scene and opportunity to restrain the killer or aid the victim; any efforts taken to minimize the risk of violence in committing the felonies; and the duration of the felony. (*Clark, supra,* 63 Cal.4th at pp. 618–623.)

Thomas was convicted of special circumstance felony murder in 1996, long before the Supreme Court's rulings in *Banks* and *Clark* narrowed liability under section 190.2, subdivision (d). The Supreme Court granted review in *Strong, supra,* 13 Cal.5th 698 to resolve a split among the courts of appeal as to whether findings of major participation and reckless indifference to human life predating *Banks* and *Clark* preclude a defendant from making out a prima facie case for relief under section 1172.6. (*Strong,* at p. 710.) Addressing and rejecting various counterarguments, the *Strong* court

11

concluded that section 1172.6 did not impose any absolute bar. (*Strong,* at pp. 710, 711.)

First, the court rejected the plain language argument raised in one leading case. In requiring a defendant to show that he "could not presently be convicted of murder or attempted murder because of" amendments made to murder liability, section 1172.6, subdivision (a)(3) did not mean to suggest that the claim to relief could not also rest on *Banks* and *Clark* clarifications. (*Strong, supra,* 13 Cal.5th at pp. 711–713.) Second, it found no statutory basis to require a defendant to first exhaust habeas remedies under *Banks* and *Clark* before filing a section 1172.6 petition. (*Strong,* at pp. 713–714.) Third, the court explained that issue preclusion did not bar relitigating the major participant or reckless indifference findings given the "significant change" to the relevant legal standards under *Banks* and *Clark.* (*Strong,* at p. 717.) As the *Strong* court explained, "[f]or petitioners with pre-*Banks/Clark* findings, no judge or jury has ever found the currently required degree of culpability for a first time. Allowing reexamination of the issue under these circumstances does not permit 'a second bite of the apple' because the changes in the law mean there is now 'a different apple.' " (*Strong,* at p. 718.)

*Strong* holds that a defendant convicted of special circumstance murder based on pre-*Banks/Clark* findings of major participation and reckless indifference is not categorically barred from seeking section 1172.6 relief. (*Strong, supra,* 13 Cal.5th at pp. 710, 720.) The trial court erred in concluding otherwise.

B. *The Trial Court Must Issue an Order to Show Cause.*

In our prior opinion, we concluded that the trial court's error could potentially be corrected by conducting an individualized review of Thomas's

record of conviction to determine whether substantial evidence supported the special circumstance findings under the *Banks* and *Clark* frameworks. Because our limited record did not permit us to make such a finding, we remanded for the trial court to conduct a sufficiency-of-the-evidence review of the trial record, applying the *Banks* and *Clark* standards.

As *Strong* makes clear, this solution is untenable because *Banks* and *Clark* significantly altered the trial landscape by changing the arguments available to counsel, the evidence counsel might have sought to introduce, and overall trial strategies. (*Strong, supra,* 13 Cal.5th at p. 719.) After *Banks* and *Clark*, trial counsel could seek clarifying jury instructions on *Banks* and *Clark* to guide deliberations, possibly affecting outcomes. (*Strong,* at pp. 719–720.) The *Strong* court concluded that "[a]n after-the-fact court review of a pre-*Banks* and *Clark* record does not account for all of these differences." (*Strong,* at p. 720.) With the Legislature making clear that substantial evidence supporting a murder conviction would not prove ineligibility for relief at the evidentiary hearing (§ 1172.6, subd. (d)(3)), such evidence likewise could not be a basis "for denying a petitioner the opportunity to have an evidentiary hearing in the first place." (*Strong,* at p. 720.)

Thomas was convicted in 1996, with a jury finding he acted as a major participant with reckless indifference to human life. *Banks* substantially clarified the law regarding major participation in 2015, and *Clark* did the same regarding reckless indifference to human life. "Neither the jury's pre-*Banks* and *Clark* findings nor a court's later sufficiency of the evidence review amounts to the determination section 1172.6 requires, and neither set of findings supplies a basis to reject an otherwise adequate prima facie showing and deny issuance of an order to show cause." (*Strong, supra,* 13

13

Cal.5th at p. 720.)  Accordingly, we reverse and direct the trial court to issue an order to show cause and conduct further proceedings required under section 1172.6 to evaluate Thomas's claim for relief.

## DISPOSITION

The order summarily denying Thomas's resentencing position is reversed.  The matter is remanded, and the trial court is directed to issue an order to show cause and conduct further proceedings under section 1172.6.


DATO, J.

WE CONCUR:


O'ROURKE, Acting P. J.


IRION, J.

14